Nos. 22-1422, 22-1530

# In the United States Court of Appeals
# For the Eighth Circuit

RED RIVER VALLEY SUGARBEET GROWERS ASSOCIATION, *et al.*,
*Petitioners*,

v.

MICHAEL S. REGAN, ADMINISTRATOR, UNITED STATES ENVIRONMENTAL PROTECTION AGENCY AND UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,
*Respondents.*

On Petition for Review from the U.S. Environmental Protection Agency

**BRIEF FOR THE STATE OF MISSOURI AS *AMICUS CURIAE* IN SUPPORT OF PETITIONERS**

OFFICE OF THE MISSOURI
ATTORNEY GENERAL
Supreme Court Building
P.O. Box 899
Jefferson City, Missouri 65102
Phone: 573-751-8870
Fax: 573-751-0774
Jeff.johnson@ago.mo.gov

**ERIC S. SCHMITT**
*Attorney General*

Justin Smith, MO 63253
*First Assistant Attorney General*
D. John Sauer, MO 58721
*Solicitor General*
Jeff P. Johnson MO 73249
*Deputy Solicitor General*

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................... i

TABLE OF AUTHORITIES .................................................................... ii

STATEMENT OF THE *AMICI CURIAE*'S INTEREST .......................... 1

SUMMARY OF ARGUMENT ................................................................. 4

ARGUMENT ............................................................................................ 6

I.     The FFDCA's text and structure require that EPA make a safety determination for each tolerance and EPA's failure to do so is arbitrary and capricious. .................................................................. 6

CONCLUSION ....................................................................................... 10

CERTIFICATE OF COMPLIANCE ...................................................... 11

CERTIFICATE OF SERVICE ............................................................... 12

# TABLE OF AUTHORITIES

**Cases** **Pages(s)**

*League of United Latin Am. Citizens v. Regan*,
   996 F.3d 673 (9th Cir. 2021) ............................................................. 4, 5

*MCI Telecommunications Corp. v. Am. Tel. & Tel. Co.*,
   512 U.S. 218 (1994) ................................................................................. 8

*Star Athletica, L.L.C. v. Varsity Brands, Inc.*,
   137 S. Ct. 1002 (2017) ............................................................................. 9

**Statutes**

21 U.S.C. § 346a(b)(1) .................................................................................. 7, 8

21 U.S.C. § 346a(b)(2)(A) .......................................................................... 5, 6, 9

Mo. Ann. Stat. § 27.060 ................................................................................ 1, 2

**Rules**

Fed. R. App. P. 29 and 32 ................................................................................ 11

Federal Rule of Appellate Procedure Rule 29(a)(2) ......................................... 1

**Regulations**

Notice of Availability,
   85 Fed. Reg. 78,849 (Dec. 7, 2020) ................................................... 5, 6, 7

**STATEMENT OF THE *AMICI CURIAE*'S INTEREST**

The Attorney General of Missouri is Missouri's chief legal officer and has the authority to file briefs on behalf of Missouri pursuant to Federal Rule of Appellate Procedure Rule 29(a)(2). *See* Mo. Rev. Stat. § 27.060.

Missouri has a $93.7 billion agriculture industry.[1] Agriculture employs nearly 460,000 Missourians and covers 27.8 million acres of farmland. Missouri grows 290.5 million bushels of soybeans and 684,000 bales of cotton per year, making it the sixth largest producer of those crops. *Id.* In 2017, Missouri exported $1.4 billion in soybeans across the globe.[2] In 2021, Missouri shipped more than $3.1 billion in agricultural exports, including more than $600 million in soybeans and soybean meal.[3] .

Controlling pests is vital to agriculture. Chlorpyrifos has been registered for use in the United States since 1965. Add. 6. It successfully

---

[1] Missouri Department of Agriculture, *Missouri agriculture at a glance*, available at https://agriculture.mo.gov/abd/intmkt/pdf/missouriag.pdf.
[2] Office of the United States Trade Representative, *State Benefits of Trade*: *Missouri*, available at https://ustr.gov/map/state-benefits/mo.
[3] Missouri Department of Agriculture, *Domestic & International Marketing Program*, Table Missouri's Top 10 Agricultural Exports, available at https://agriculture.mo.gov/abd/intmkt/.

protects a wide variety of crops against a host of insects and is cost-effective for farmers. *See, e.g.*, American Farm Bureau Federation Letter, EPQ-HQ-OPP-2015-0653-0581 (Jan. 14, 2017) ("Chlorpyrifos is effective in treating a number of Arthropod pests in soybeans, including soybean aphid, bean leaf beetle, caterpillars, grasshoppers, leafhopper, two-spotted mites and others."). Due to its success, chlorpyrifos was used for a variety of agricultural and other uses. *Id.* (stating U.S. Department of Agriculture recognized that chlorpyrifos had been part of pest management "for approximately 50 years and is used to control a wide array of primary and secondary pests in over 75 cropping systems"); Add. 6.

Missouri has a vital interest in protecting its citizens' livelihoods and their food security. Revoking all tolerances, as EPA did in the Final Rule, threatens both. As detailed by *Amici* to the Ninth Circuit case, chlorpyrifos is a leading product because in some uses, like wheat, there are "no other choices of reliable and effective products," and it prevents significant yield losses, including "up to a 40% yield loss in the Midwest" for soybeans among other uses. *Brief of Agribusiness Council of Indiana, et. al*, Nos. 19-71979 & 19-71982, *League of United Latin American*

*Citizens v. Regan*, Part II.A (9th Cir. Mar. 6, 2020).[4] Recent events have shown that the world's food security is more precarious than ever before. Ana Swanson, *Ukraine Invasion Threatens Global Wheat Supply*, New York Times (updated Mar. 23, 2022)[5] ("Russia and Ukraine together export more than a quarter of the world's wheat, feeding billions of people in the form of bread, pasta and packaged foods."). EPA's action poses real danger and causes even greater uncertainty in a wide array of agriculture products.

---

[4] Also filed in this case as Exhibit 1 to the Goldman Declaration (filed Mar. 14, 2022).
[5] *Available at* https://www.nytimes.com/2022/02/24/business/ukraine-russia-wheat-prices.html.

## SUMMARY OF ARGUMENT

In 2006, EPA approved the tolerances and registrations revoked by the Final Rule, concluding that "the existing tolerances were safe and that chlorpyrifos continued to meet the FIFRA standard for registration." Add. 6. A year later, a group of non-profits petitioned EPA to undo that finding and revoke all current tolerances and cancel all registrations because the "scientific evidence now available showed that the current chlorpyrifos tolerances were not safe, especially for infants and children; indeed, they argued, 'no safe level of early-life exposure to chlorpyrifos can be supported.'" *League of United Latin Am. Citizens v. Regan*, 996 F.3d 673, 682 (9th Cir. 2021). After a more than a decade of EPA reviews and orders, the scientific answer to whether the tolerances for chlorpyrifos are safe remained unclear. In 2017, the EPA denied the petition and in 2019, the EPA denied the petition after remand from the Ninth Circuit reiterating that more scientific certainty was needed to make any decision and that the 2007 petition failed to provide "reliable evidence sufficient to meet [its] burden." *Id.* at 690. The Ninth Circuit disagreed with EPA's refusal to make a safety finding on that petition,

and remanded with instructions to either revoke or modify the tolerances. *Id.* at 703.

EPA chose the path of least judicial resistance and revoked all tolerances and cancelled all relevant registrations. In doing so, EPA failed to make any finding—either that the tolerances for any food were unsafe or safe. Add. 3 ("EPA cannot make a safety finding … . EPA cannot determine that there is a reasonable certainty that no harm will result from aggregate exposure to residues."). This is contrary to the statutory text that requires EPA to make a finding. 21 U.S.C. § 346a(b)(2)(A). The Final Rule repeats the error that the Ninth Circuit identified: "refusing to make a safety finding." *LULAC*, 996 F.3d at 697. The statute explicitly requires EPA to determine a tolerance is "not safe" in order to revoke it. Without an individual determination either way, EPA cannot revoke all tolerances.

Importantly, EPA did not determine that all tolerances were unsafe because it did not reject or amend its 2020 Proposed Interim Decision (PID) that eleven high-benefit crop tolerances would be safe. *See* Notice of Availability, 85 Fed. Reg. 78,849 (Dec. 7, 2020). EPA rejected claims that it could have retained those uses by stating that it did not want to

5

be in the position of "picking 'winners and losers'" and that it cannot retain specific tolerances "until aggregate exposures have been reduced to acceptable levels." Add. 47. But EPA did not determine aggregate exposure once the number of tolerances reduced from 80 to 11. *Id.* Without finding that all uses are unsafe, EPA should not be allowed to revoke admittedly safe uses. EPA's all or nothing approach revoking all tolerances cannot be justified in light of the agency's failure to make a finding that no tolerance is safe.

EPA's Final Rule does not comport with its statutory obligations to make a finding and act consistent with Congress' directions. For this and all the reasons stated by Petitioners, the Court should vacate the Denial Order and Final Rule.

## ARGUMENT

**I. The FFDCA's text and structure require that EPA make a safety determination for each tolerance, and EPA's failure to do so is arbitrary and capricious.**

Congress clearly requires EPA to make a safety finding when exercising its power to establish, leave in effect, modify, or revoke a tolerance for a pesticide chemical residue. 21 U.S.C. § 346a(b)(2)(A). All congressionally prescribed actions require "the Administrator [to]

determine[] that the tolerance is safe" or "it is not safe." *Id.* To the extent there is uncertainty based on all anticipated dietary exposures and exposures based on "reliable information," the statute requires EPA to determine a safe tolerance. The Final Rule does not do any of the foregoing, and revokes all tolerances, even those tolerances it determined would be safe. *See* Notice of Availability, 85 Fed. Reg. 78,849 (Dec. 7, 2020).

In response to a petition, EPA may only establish, modify, or revoke a tolerance for a pesticide "in or on a food" and may not "modify" the tolerance by "expanding the tolerance to cover additional foods." 21 U.S.C. § 346a(b)(1). EPA is constrained by the FFDCA to reviewing each tolerance for each food. If a petitioner wishes to add a tolerance to a food, EPA may "establish" another tolerance, but EPA may only "modify" a tolerance with respect to approved tolerances for a specific food. The FFDCA petition provisions require a tolerance-by-tolerance approach.

The FFDCA states what happens when a determination is made— and it does not leave EPA discretion to fail to make that finding, as EPA's power flows from that determination. EPA found it could not make a safety finding to support the current tolerances, Add. 3, but it similarly

7

did not determine that the current tolerances were unsafe. It only noted it could not determine that no harm would arise from aggregate exposures to currently registered tolerances. *Id.*

In response to Petitioners' objections, EPA stated that it is required to assess the safety of tolerances in the aggregate, thus once "one tolerance is unsafe, all tolerances are equally unsafe until aggregate exposures have been reduced to acceptable levels." Add. 47. By EPA's lights, any finding that an aggregate exposure is unsafe permits EPA to revoke all tolerances, even those that the petition does not challenge. Aside from the due process concerns that would arise by revoking tolerances not at issue in a particular petition, this reasoning runs afoul of the statutory text that focuses on individual tolerances, strengthened by the statutory term "modify."[6]

It is generally accepted that "'to modify' means to change moderately or in minor fashion." *MCI Telecommunications Corp. v. Am. Tel. & Tel. Co.*, 512 U.S. 218, 225 (1994) (collecting dictionary

---

[6] This structural inference is further buttressed by the extensive registration process and requirements of FIFRA. *See* Petitioners' Br. 48-55 (arguing how FFDCAA should harmonize with FIFRA registration).

8

definitions). The statute's express prohibition on modifying a tolerance to include other foods supports the common understanding that "modify" means an incremental change. The statute's standard similarly differentiates between "modify" and "revoke," indicating a lesser action that can be taken if EPA finds a specific tolerance to be unsafe. 21 U.S.C. § 346a(b)(2)(A); *see also Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 137 S. Ct. 1002, 1010 (2017) (courts should give "each word its 'ordinary, contemporary, common meaning'"). Determining that a tolerance will result in harm from the aggregate exposure does not require revoking all tolerances—as EPA suggests. Indeed, under that approach EPA would never be able to "modify" or incrementally change a tolerance—every tolerance would lead to widespread revocation. Instead, EPA is limited to determining whether the individual tolerance will result in harm when included with the aggregate exposure to the pesticide chemical residue and then deciding to modify or revoke that tolerance.

EPA's revocation of all tolerances is arbitrary and capricious because it had previously found eleven high benefit use tolerances that would be safe. EPA acknowledged that these represented a subset of registered uses and that additional assessments would be needed. Add.

56. EPA rejected retaining these uses, because "it was not a complete and full assessment of the approved uses of chlorpyrifos." *Id.* Yet, in revoking all other uses, EPA's reason holds no force because the safe subset of uses would have been the universe of tolerances. Moreover, EPA's own findings show that there are tolerances at which chlorpyrifos are safe for food products—but instead of permitting those safe uses to continue, EPA has forced a disruptive change that endangers agricultural yields that are critical to Missouri's economy.

The Court cannot allow EPA to give short shrift to its statutory duties because it unduly delayed action on the previous petition for thirteen years. EPA should follow its statutory obligations and make the required finding for each individual tolerance while harmonizing its actions with its previous findings made during the FIFRA registration process.

## CONCLUSION

This Court should grant the Petition and all relief requested by the Petitioners.

Dated: May 31, 2022          Respectfully submitted,

                                          **ERIC S. SCHMITT**
                                          *Attorney General*

/s/ *Jeff P. Johnson*
Jeff P. Johnson, MO 73249
*Deputy Solicitor General*
Justin Smith, MO 63253
*First Assistant Attorney General*
D. John Sauer, MO 58721
*Solicitor General*

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that this motion complies with the typeface and formatting requirements of Fed. R. App. P. 29 and 32, and that it contains 1,850 words as determined by the word-count feature of Microsoft Word. The brief has been scanned for viruses and is virus free. */s/ Jeff P. Johnson*

# CERTIFICATE OF SERVICE

I hereby certify that on May 31, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system, and I will serve a copy of the foregoing on all participants in the case who are not registered CM/ECF users by mailing a copy of the same, first-class, postage paid, to the address listed on the Court's CM/ECF system.

<em>/s/ Jeff P. Johnson</em>